UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LA QUINTA FRANCHISING LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ALSBURY HOSPITALITY, INC. et al.,<br><br>*Defendants/Counterclaimants/Third-Party Claimants*,<br><br>v.<br><br>LQ MANAGEMENT LLC and TRAVEL & LEISURE LLC,<br><br>*Third-Party Defendants*. | No. 22-cv-05184 (MEF)(MAH)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
    **A.**   **The Facts**
    **B.**   **Procedural History**
    **C.**   **The Motion**
II.  **Liquidated Damages**
    **A.**   **The First Step**
    **B.**   **Contractual Choice of Law**
        **1.**  **No Substantial Relationship**
        **2.**  **Fundamental Policy**

### III. Conclusion

\* \* \*

A franchisee said it wanted to end its relationship with its franchisor, and the franchisor sued.

The franchisee has now moved for partial summary judgment, arguing that one of the franchisor's claims fails as a matter of law.

The motion is denied.

\* \* \*

### I. Background

#### A. The Facts

The relevant facts for now are as follows.

A hotel franchisor[1] entered into an agreement with a franchisee.[2] See Defendants' Response to Plaintiff's Statement of Undisputed Facts (ECF 67) ¶ 6; Defendants' Motion for Summary Judgment, Exhibit B (ECF 62-4) ("Franchise Agreement"). The agreement concerned the operation of a particular hotel. See Franchise Agreement § 1.

The franchisee operated the hotel as a franchise for just under two years.

At that point, the franchisee said it wanted to end the parties' relationship, see Plaintiff and Third-Party Defendant's Brief in Support of Their Motion for Summary Judgment, Exhibit 6 (ECF 63-10) (June 18, 2022 letter), id., Exhibit 7 (ECF 63-11) (June 29, 2022 letter) --- and since then, the franchisee has run the hotel independently.[3] See Defendants' Response to Plaintiff's Statement of Undisputed Facts ¶ 11.

---

[1] La Quinta Franchising LLC.

[2] Alsbury Hospitality, Inc.

[3] Precisely when the agreement might have been terminated, and by whom --- these are disputed. See Plaintiff's Response to Defendants' Statement of Undisputed Facts (ECF 66-1) ¶ 7;

2

### B. <u>Procedural History</u>

The franchisor sued the franchisee for breach of contract, along with two of the franchisee's guarantors.[4]

From here, the franchisor is referred to as "the Plaintiff," and the franchisee and its guarantors are referred to collectively as "the Defendants."

For this Opinion and Order, one of the Plaintiff's claims is relevant.

Namely, the Count II claim that the Defendants must pay liquidated damages for breaching the franchise agreement. <u>See</u> Complaint (ECF 1) ¶ 29-35.

### C. <u>The Motion</u>

The Defendants move for summary judgment on Count II, arguing that they cannot be required to pay liquidated damages. <u>See</u> Brief in Support of Defendants' Motion for Summary Judgment (ECF 62) ("Defendants' Motion for Summary Judgment") at 1.

The motion is before the Court.[5]

## II. <u>Liquidated Damages</u>

The Defendants' primary argument: the Court should apply Minnesota law --- and under Minnesota law, franchisors (like the Plaintiff) cannot require franchisees (like the franchisee-

---

Defendants' Response to Plaintiff's Statement of Undisputed Facts ¶¶ 12-14.

[4] Percy Pooniwala and Dinaz Surtee.

[5] Two things. <u>First</u>, the Defendants also move for summary judgment as to Count III of the Complaint, which is a claim in the alternative for actual damages. <u>See</u> Defendants' Motion for Summary Judgment at 1, 17; Complaint ¶¶ 36-39. That part of their motion is likely obviated by the Court's ruling here that liquidated damages are not unavailable as a matter of law. <u>See</u> footnote 12. <u>Second</u>, the Plaintiff has filed its own motion for summary judgment. <u>See</u> Plaintiff and Third-Party Defendant's Brief in Support of their Motion for Summary Judgment (ECF 63) at 1. This Opinion and Order deals only with the Defendants' motion.

3

Defendant) to pay liquidated damages.[6]  See Defendants' Motion for Summary Judgment at 3-6, 9-10.  Therefore, the argument goes, the Plaintiff cannot seek such damages here, even though they are provided for under the franchise agreement.  See id. at 17.

### A. The First Step

"Under New Jersey's[7] choice of law rules, 'the first step in the analysis is to determine whether a conflict exists between the laws of the interested states.'"  Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 286 (D.N.J. 2023) (quoting Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007)) (cleaned up).

If an in-the-abstract legal difference is identified, "[a] conflict of law arises [only] when the application of one or another state's law may alter the outcome of the case, or when the law of one interested state is offensive or repugnant to the public policy of another."  Id. (quoting In re Accutane Litig., 235 N.J. 229, 254 (2018)) (cleaned up).

If there is not a potentially outcome-altering conflict, then the Court must apply the law of the forum state, New Jersey.

---

[6] The Minnesota Franchise Act prohibits any person from "engag[ing] in any unfair or inequitable practice in contravention of such rules as the commissioner may adopt defining as to franchises the words 'unfair and inequitable.'"  Minn. Stat. § 80C.14.  And under the relevant regulations, "[i]t shall be unfair and inequitable for any person to . . . require a franchisee . . . to consent to liquidated damages."  Minn. R. 2860.4400(J).  In addition, the Minnesota Franchise Act, where it applies, voids any choice of law provision "purporting to bind any . . . corporation, organized or incorporated under the laws of this state . . . to waive compliance . . . with any provision [of the Act] or any rule or order thereunder."  Minn. Stat. § 80C.21.

[7] The Court has subject-matter jurisdiction over this case under the diversity statute, 28 U.S.C. § 1332.  See Complaint ¶ 5.  And a federal court sitting in diversity must apply the choice of law rules of the forum state --- here, New Jersey.  See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

4

See McCarrell v. Hoffman-La Roche, Inc., 227 N.J. 569, 584 (2017).

If there is a potentially outcome-altering conflict, the Court must conduct a choice of law analysis. See Schulman, 684 F. Supp. 3d at 286-87.

\*   \*   \*

The Defendants argue, as noted, that Minnesota law applies. See Defendants' Motion for Summary Judgment at 3-6, 9-10.

For its part, the Plaintiff points to New Jersey law. See Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (ECF 66) ("Opposition Brief") at 3-7.

Is there a difference between these two bodies of law that "may alter the outcome of [this] case?" Schulman, 684 F. Supp. 3d at 286.

Yes.

Under Minnesota law, a franchisor generally cannot require a franchisee to consent to liquidated damages. See Minn. Stat. § 80C.14; Minn. R. 2860.4400(J).

On the flip side, New Jersey does not have any such statutory bar. And liquidated damages are routinely awarded in New Jersey law cases that concern franchisor-franchisee disputes. See, e.g., Ramada Worldwide Inc. v. Keys Hosp., LLC, 761 F. Supp. 3d 771, 779 (D.N.J. 2024); Ramada Worldwide Inc. v. Highend Hotel Grp. of Am., LLC, 2024 WL 4903559, at *6-7 (D.N.J. Nov. 26, 2024); Super 8 Worldwide, Inc. v. Jai-Ambe Neb., Inc., 2012 WL 933283, at *4 (D.N.J. Mar. 19, 2012).

Bottom line: the difference between the laws of New Jersey and Minnesota "may alter the outcome of the case." Schulman, 684 F. Supp. 3d at 286.

If New Jersey law applies, the liquidated damages set out in the franchise agreement are on the table.

If Minnesota law applies, they are not.

This is a real, practical conflict between New Jersey law and Minnesota law.

Accordingly, the Court must conduct a choice of law analysis.

### B. Contractual Choice of Law

As noted above, the question here is whether Minnesota or New Jersey law applies --- and the franchise agreement seems to give the answer.

It says that New Jersey law applies.

> This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles. The New Jersey Franchise Practices Act will not apply to any facility located outside the State of New Jersey.

Franchise Agreement § 17.6.1.

And per the New Jersey[8] Supreme Court in Instructional Systems, Inc. v. Computer Curriculum Corp., "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." 130 N.J. 324, 341 (1992).[9]

\* \* \*

At first glance, what is set out above looks to be the end of the road.

The franchise agreement chooses New Jersey law. And such choices are to be "uph[e]ld."

But there is a wrinkle.

Under New Jersey law, there are two exceptions to the general rule that a contractual choice of law provision is to be applied as written. See id.

---

[8] Recall that the Court looks to New Jersey choice of law rules because it is sitting in diversity in New Jersey. See footnote 7; see also Homa v. Am. Express Co., 558 F.2d 225, 227 (3d Cir. 2009).

[9] No one suggests here that choosing New Jersey law, or contracting for liquidated damages, is at odds in any way with "New Jersey's public policy." Instructional Sys., 130 N.J. at 341.

Do either of these exceptions apply here?  Consider that question starting just below.

### 1. **No Substantial Relationship**

The first exception: if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."  Id. at 342; see also Collins on behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 184 (3d Cir. 2017).

But that is not this case.

The "chosen state," New Jersey, is no randomly tossed-in jurisdiction.

The Plaintiff has its principal place of business in New Jersey.  See Complaint ¶ 1; Response to Plaintiff's Statement of Undisputed Facts ¶ 1.

And that is enough, in this context, to establish the required "substantial relationship."  See Instructional Sys., 130 N.J. at 342 (so holding as to the location of a party's headquarters); Collins, 874 F.3d at 184 & n.6 (applying New Jersey law and holding same); Restatement (Second) of Conflicts of Laws § 187 cmt. f (1969) ("[T]he parties will be held to have had a reasonable basis for their choice . . . [when the chosen state is] where one of the parties is domiciled or has his principal place of business.").

The first exception does not apply here.

### 2. **Fundamental Policy**

A second exception to the general rule: New Jersey courts will not honor a contract's choice of law provision if:

> [A]pplication of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

Instructional Sys., 130 N.J. at 342.

7

This exception does not kick in here, either.

This is because one of the necessary elements of the second exception --- that another state has a "materially greater interest" than the "chosen state," id. --- is not established here.

* * *

To judge whether one state has a materially greater interest than the chosen state, New Jersey law compares the contacts between (a) the relevant states and (b) the underlying circumstances of the case.

For that analysis, the focus has generally been on five things. First, the citizenship of the relevant parties. Second, the physical location of the contracting parties while they negotiated the agreement. Third, their physical location when they signed the agreement. Fourth, the place where the contract's obligations were to be performed. And fifth, the place where the basic subject matter of the contract was located. See, e.g., Instructional Sys., 130 N.J. at 345-46; Coface Collections N. Am. Inc. v. Newton, 430 F. App'x 162, 167-68 (3d Cir. 2011) (applying New Jersey choice of law rules); Homa v. Am. Express Co., 558 F.2d 225, 232 (3d Cir. 2004) (same); Rosenberg v. Hotel Connections, Inc., 2022 WL 7534445, at *4-5 (D.N.J. Oct. 13, 2022) (same); Diversant, LLC v. Carino, 2018 WL 1610957, at *3-4 (D.N.J. Apr. 2, 2018) (same).[10]

Come back now to this case.

Pull out the facts that fall into each of these five categories, and arrange them by state.

The Minnesota contacts first:

The franchisee-Defendant is a Minnesota corporation. See Defendants' Response to Plaintiff's Statement of Undisputed Facts ¶ 3. The guarantor-Defendants are citizens of Minnesota. See id. ¶¶ 4-5. And the Defendants signed the franchise

---

[10] The factors that New Jersey courts look to are the same factors that the Restatement (Second) of Conflict of Laws points to. See Restatement (Second) of Conflict of Laws § 187(2)(b) (referencing id. § 188, which lists the same five "contacts to be taken into account" "[i]n the absence of an effective choice of law by [contracting] parties").

8

agreement in Minnesota. <u>See</u> Defendants' Motion for Summary Judgment, Exhibit H (ECF 62-10) ¶ 5.

Now over to the New Jersey contacts:

The Plaintiff is a Nevada limited liability company with its principal place of business in New Jersey. <u>See</u> Defendants' Response to Plaintiff's Statement of Undisputed Facts ¶ 1. And it appears that, during the negotiating and contracting process, the Plaintiff's employees were operating from New Jersey. <u>See</u> Opposition Brief, Exhibit 3 (ECF 66-5) (listing the address of the "franchise seller" in New Jersey and asking that the Defendants return a particular document to the same); Motion for Summary Judgment, Exhibit F (ECF 62-8) at 3 (relevant employee's email indicating a New Jersey address).

And finally, the hotel.

It is the "subject" of the franchise agreement. But it is not in Minnesota or New Jersey. Rather, it is in Indiana. <u>See</u> Franchise Agreement at 1; Defendants' Statement of Undisputed Facts (ECF 62-12) ¶ 3; Plaintiff's Statement of Undisputed Facts (ECF 63-2) ¶ 6.

Bringing all this together:

- The Defendants have strong connections to Minnesota.
- The Plaintiff has a strong connection to New Jersey.
- And the subject of the contract is in Indiana.

This is a mixed bag.

Minnesota and New Jersey (and Indiana) all have a roughly equal connection to this dispute. The balance scale does not much move; the weight sitting on one side is not markedly heavier than the weight on the other.

All of that adds up to something close to a tie, a push --- certainly not to a "materially greater interest" in this case for Minnesota (or any other state).

What this means: the second exception to the general rule is not viable here; the contractual choice of law provision must be honored.

Courts applying New Jersey law have repeatedly landed on that conclusion in cases that line up like this one --- where the relevant contacts do not clearly point in a single direction.

9

See, e.g., Howmedica Osteonics Corp. v. Howard, 2022 WL 16362464, at *6-7 (D.N.J. Oct. 28, 2022) (parties were citizens of different states, one party's relevant business activities were based in State 1, the other party's work occurred in State 2, and the alleged breach occurred in State 2 --- no materially greater interest); Diversant, 2018 WL 1610957, at *3-4 (one party was a citizen of State 1, performed all relevant duties there, and signed the relevant agreement while located there, while the other party was headquartered in State 2 and negotiated, executed, and performed the agreement there --- no materially greater interest); Chemetall US Inc. v. Laflamme, 2016 WL 885309, at *7-8 (D.N.J. Mar. 8, 2016) (one party's principal place of business was in State 1, while the other party was a citizen of State 2, performed all work there, and received and executed the agreement there --- no materially greater interest); Actega Kelstar, Inc. v. Musselwhite, 2010 WL 744126, at *3 (D.N.J. Mar. 2, 2010) (one party was a citizen of State 1 and performed his duties there and in a number of other states, while the other party was a citizen of State 2 --- no materially greater interest).

\* \* \*

To be sure, New Jersey's "materially greater interest" test is not just a matter of tallying up contacts and balancing them against each other.

Rather, as the Third Circuit highlighted in Adler v. Gruman Corp., a court must (a) consider how a given contact with a state dovetails with that state's "interest," and (b) weigh the contact based on the extent to which it does. See 135 F.4th 55, 74-76 (3d Cir. 2025).

This approach appears connected to one of the familiar ways of thinking about choice of law. Under this approach:

Imagine, for example, that a certain provision of a state's tort law is designed to ensure that an injured person gets adequate compensation. If so, that state may have no interest in its tort law being applied where the state's only connection to a case is that its citizen hurt someone. The state's interest (enough compensation) is in play only if its citizen is the one who was injured --- and might therefore be eligible for compensation. If the state's only link to the case is that its citizen hurt someone else, then the state has a connection to the case --- but no interest in its law applying. This is

10

because the state's interest in adequate compensation is not thought to be a universal, across-the-board concern for adequate compensation.  Rather, it is an interest in adequate compensation when that might matter in a practical way for the state, as when its citizen is the one who is hurt.  See, e.g., Kermit Roosevelt III, The Myth of Choice of Law: Rethinking Conflicts, 97 Mich. L. Rev. 2448, 2520-25 (1999) (describing this way of thinking, and citing the classic cases: Grant v. McAuliffe, 264 P.2d 944 (Cal. 1953) and Erwin v. Thomas, 506 P.2d 494 (Or. 1973)); see also Neumeier v. Keuhner, 31 N.Y.2d 121 (1972).

All of this can matter in tort cases.

But it can also matter when it comes to contract law.  As to, say, contractual choice of law provisions in a credit agreement or a franchise agreement.

In the consumer credit agreement, New Jersey's interest is not said to be abstract --- in a certain general vision of consumer rights, untethered to an actual impact on the state or its people.  Rather, "New Jersey's interest [is] in protecting its consumers' ability to enforce their rights under the Consumer Fraud Act."  Homa, 558 F.3d at 232 (emphasis added).

Same thing when it comes to franchise agreements.  "New Jersey has a strong policy in favor of protecting its franchisees." Instructional Sys., 130 N.J. at 345 (emphasis added).

What this adds up to: for the purpose of the "materially greater interest" test, a contact with a state does not count all that much --- and may not count at all --- if the contact is not linked to an actual, real-life impact on the state.[11]

In this case, as noted, Minnesota's contacts to the contractual choice of law provision are essentially as strong as New Jersey's.

---

[11]  For example, if Indiana law were put forward here because the hotel is there, that contact would not weigh strongly in the direction of applying Indiana law to the underlying franchise agreement and the question of whether liquidated damages are available under it.  After all, what interest would Indiana have in whether a Minnesota franchisee must pay liquidated damages to a New Jersey franchisor?  Indiana has a contact to the case, because of where the hotel is.  But it has no real interest in the liquidated damages question --- and so its case-contact is not especially meaningful to the choice of law question as to liquidated damages.

11

And neither state's contacts can be discounted. If the choice of law provision is enforced, the New Jersey franchisor will be entitled to liquidated damages --- something New Jersey has a concrete interest in. Alternatively, if the choice of law provision is not enforced, the Minnesota franchisee will not be required to pay liquidated damages --- something Minnesota has a practical interest in.

\* \* \*

Adler suggests that a state's practical interest in a case matters. See Adler, 135 F.4th at 74-75 (discussing Homa and Instructional Systems); see also Instructional Sys., 130 N.J. at 345-46.

And Adler might mean that a state's "policy" interest in a case matters, too. See 135 F.4th at 74-75.

But if so, that does not change the analysis.

New Jersey, for example, has a policy interest in seeing contractual choice of law provisions applied.

> [H]onoring the parties' selected law serves the prime objective of contract law . . . to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. Eliminating uncertainties about which law governs may be particularly critical where, as here, the parties reside in and perform their contractual obligations in different jurisdictions.

Collins, 874 F.3d at 183-84 (applying NJ law); see also Universal Prop. Servs. Inc. v. Lehigh Gas Wholesale Servs., Inc., 2021 WL 118940, at *13 (D.N.J. Jan. 13, 2021) (same).

And Minnesota has a policy interest in protecting franchisees. See Twin Cities Galleries, LLC v. Media Arts Grp., Inc., 415 F. Supp. 2d 967, 975 (D. Minn. 2006), rev'd on other grounds by 476 F.3d 598 (8th Cir. 2007) ("[T]he court finds that laws and legal precedent of the state of Minnesota affirmatively establish an explicit, well-defined and dominant public policy to protect Minnesota franchisees."). And part of that policy, as relevant here, is to prevent its franchisees from being required to pay liquidated damages. See Minn. Stat. § 80C.14; Minn. R. 2860.4400(J).

12

Taking all this together, the results are what they were before: a wash.

Minnesota and New Jersey each have meaningful contacts with the parties. And those contacts count. They are not random.

Each state has both practical interests and policy interests that would be implicated by choosing its state's law over the other's.

Minnesota doubtless has an interest in the determination of the liquidated damages issue here. But Minnesota cannot be said to have a "materially greater interest," Instructional Sys., 130 N.J. at 342, than New Jersey.

Therefore, the second exception has no place here.

\*   \*   \*

Because neither of the two potentially relevant exceptions applies, see Part II.B.1 and Part II.B.2, the Court will defer to the parties' choice --- that the franchise agreement "be governed by and construed under the laws of the State of New Jersey." Franchise Agreement § 17.6.1.

This means that the Defendants' motion as to Count II, which is premised on application of Minnesota law, must fail.

### III. Conclusion

The Defendant's motion for summary judgment as to Count II is denied.[12]

---

[12] As a fallback, should it not be able to obtain liquidated damages, the Plaintiff also seeks actual damages. See Complaint ¶¶ 36-39. The Defendants argue that the case for actual damages has not been made, because the Plaintiff has not put forward enough evidence. See Defendants' Motion for Summary Judgment at 12-16; Reply Brief at 4-7. There does not appear to be a reason to reach this issue now, given that the Court has held that the Plaintiff, assuming it can establish the other necessary parts of its claim, can lawfully obtain liquidated damages. In any event, the Defendants' actual damages argument does not seem solid. Under the franchise agreement, the Defendants were required to pay the Plaintiff certain recurring fees, which were calculated as a percentage of the hotel's gross room revenue. See Franchise Agreement § 7; id., Schedule C. Those fees were

IT IS on this 3rd day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

due for the duration of the agreement's twenty-year term. See id. §§ 5, 7.1. The Plaintiff's claim for actual damages seeks compensation for those as-yet-due recurring fees that it did not receive. See Complaint ¶ 37. And the Plaintiff has submitted relevant evidence, including a calculation of the recurring fees that were due immediately prior to termination, see Opposition Brief, Exhibit 6 (ECF 66-8), and a declaration that since termination, it has not been able to franchise another hotel in the same geographic area. See Declaration of Kendra Mallet in Support of Plaintiff's Motion for Summary Judgment (ECF 63-3) ¶ 3. It is hard to know why this evidence would be insufficient at the summary judgment stage. See, e.g., Howmedica, 2022 WL 16362464 at *12 (citing Red Roof Franchising, LLC v. Patel, 564 F. App'x 685, 688 (3d Cir. 2014)); see also, e.g., Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 236 (D.N.J. 2023); Allstate Life Ins. Co. v. Stillwell, 2019 WL 2743697, at *10 (D.N.J. May 16, 2019).